My name is Tom Dias and I represent Shell Chemical L.P. and Motiva Enterprises, LLC. In litigation arising from a January 31, 2016, elision in which a 750-foot Greek freighter hit two of Shell and Motiva's docks as well as a dock of Valero. Mr. Letourneau is here today as an appellant as well representing Valero and we've split up our time to where I'll take ten minutes in the main and Mr. Letourneau  The issue that was presented to the district court concerned the insurance for one of the vessels that is alleged to be at fault in causing the elision. The RST as well as we as claimants in the underlying litigation contend that there were two downbound tugs that affected the course of the freighter that in turn caused the damages at issue here and that one of the companies is CNAC Marine Services. Did they have toes? They did. Both of them had chemical toes as a matter of fact and we have included the insurers of CNAC under the Louisiana Direct Action Statute followed by a third party complaint in the CNAC limitation proceedings. When the insurance policies were produced in that proceeding, they contained a curious omission and that was an omission of any reference that the insurance coverage to be provided to its insured CNAC by the primary carrier and then following form by the first and second excess carriers would likewise be limited in the event that CNAC is able to limit its liability under the Limitation of Liability Act and we scrutinized those policies at length before filing summary judgment because it was a very curious omission considering that the Crown-Zellerback decision had been issued in 1986 and as we well, we showed by comparison that the insurers of the other two vessels, the Greek freighter as well as the other tug and tow which is Genesis Marine had such policies which specifically reference coverage being limited in the event they're assured is entitled to limit under the Limitation of Liability Act. The lower court in its ruling denied our summary judgment but did more than that. It not only denied the insurance policies, was sufficient to confer that personal right of limitation and it's on that contract language that the insurers are able to raise limitation as a personal defense. Well, then you're, I mean, I'm sure you're getting there but at issue as well is that this is on appeal from an interlocutory ruling and you all go back and forth over whether that being the case, we have no jurisdiction and should just dismiss the appeal because it's interlocutory, yada, yada. Then on the other hand, you come back and say, no, that's not the case because it's maritime and the judge actually did reach the gravamon and so forth. It's not the ordinary interlocutory, boom-de-boom-de-boom and I don't mean to oversimplify but you know where I'm headed. I know what your view is of the interlocking and stacking but be sure to hit head on this jurisdiction or not. Absolutely. So jurisdiction, of course, is allowed for interlocutory decrees and admiralty proceedings under 1292A3 and I believe and I believe the plain language of the statute makes clear that there is a dichotomy created in the statute and those are for substantive rights. As this court has ruled, it says just rights in the statute itself but substantive rights and the other half of the dichotomy is liabilities. And here we have a substantive right that the court has determined that the insurers are entitled to raise here, personal rights of a solidary obligor that the court below has held as a matter of law can be conferred based on indemnity language as opposed to any specific provision as described by Judge Brown. Is this case for appealability here? Well, the ultimate basis for the appealability here... Interlocutory appeal jurisdiction, 1292A3. Correct. And so I believe that it's in two respects here, the plain language of the statute has its own connotation to it and here the right in the first instance to raise a... I ask your case, not what your argument is because you're very explicit about your argument. I say what's your best case that holding this would be appealable? Your Honor, most of the pleadings here have addressed those that were cited by my opponent. And with that, I went and researched more and there were not any truly on point in the situation here nor have any cases been cited to the court in that regard. But I did find, Judge Jones, a couple of cases in which the Fifth Circuit has accepted an interlocutory appeal of limitation decisions in which the amount of a limitation fund has been increased prior to liability ever being determined and prior to any other rights being determined. So on the basis of the ad interim stipulation of a party's right and how much needs to be deposited in the registry of the court in order to take the place of the rem, that those have been decided on an interlocutory basis. Those are not cited in our brief, Your Honor, because I only came across these within the last couple of days. They are arguably analogous here, but they are certainly far earlier than any determination of liability or damages. And, Judge, I'm happy to provide this by letter to the court, but the case that I came across this weekend is Cross Contracting Company v. Law, 454 Federal Reporter 2nd, 408. And there's a second case, but it just simply . . . So all the ones that you've got there in hand, counsel opposite knows about them? No, sir. These are ones that . . . So suffice it to say at the end of all this, shoot a letter, the typical 28J so we have them, they have them, et cetera, so you don't eat up all of your time. Absolutely, Your Honor. One by one. You don't have to read them and whatever. Understood. And the second case just simply cites the first case of Cross Contracting Company, but there it is far before liability or damages . . . Judge Jones's question and where I started out, there is no just white cow with a pink tail case that you're able to cite precisely on the point. We get your 1292, 283 plain language, but just say here's the case where this has occurred, where the trial court has essentially adjudicated rights, blah, blah, blah. That's absolutely correct, Judge Stewart. And here also with respect to the Buker Meyer case that the appellees have cited, I believe a plain reading of that case, particularly if you go back to Judge Arsinoe's trial court opinion, that no one was contesting that the stevedore in that case in the first instance had the right to raise limitation. If, for example, the Inquitrans case or Buker Meyer were a situation where it was a warehouseman raising a limitation defense that isn't within the ambit of a bill of lading or under COGSA, I think that would have been right for determination on an interlocutory basis before the Fifth Circuit. But there, nobody was contesting before Judge Arsinoe that the right was never attached. And I'll allow Mr. Letourneau to go into some of the more substantive issues with respect to Crown Zellerbach and whether Judge Brown, in his very complete description on behalf of the en banc court and Crown Zellerbach, did not look solely to indemnity language. And in fact, if you read his dissent in the panel decision, he makes a very clear distinction between indemnity language that was at issue in Neville Towing, which he found to be insufficient to confer a personal right, and Clause 8I of the P&I Club rules, which very clearly discuss limitation of liability. And only under those circumstances does the insurer have a personal right to raise that issue. And those personal rights, whether they can be or not, are all born out of the Louisiana Civil Code. And if indemnity language alone were sufficient, then every personal right of an insured would become that of an insurer. Even spousal immunity that's allowed by Louisiana law would automatically be conferred to an insurer when, in fact, that is a personal obligation that another solidary obligor cannot raise unless that there's contract provisions in the insurance policy allowing that right. And so if indemnity language alone would be enough, then I believe that the last provision of Article 1801, which says a solidary obligor cannot raise a personal obligation of another, would be completely vitiated. Thank you. All right. Mr. LaTourneau. May it please the Court. Judge Jones, you asked what was our best case with respect to interlocutory jurisdiction. And I would draw the Court's attention to Cara Delis, the Refineria Panama S.A. What's the first name? Cara Delis, C-A-R-A-D-E-L-I-S. This was a case cited in footnote four of the nebletoeing decision, which Crowns Ellerbach overturned. But nevertheless, Cara Delis is still valid. And in Cara Delis, the Court said, we have recognized 28 U.S.C. 1292A3 as having an application primarily where a determination of the rights and liabilities of the parties has been engaged in separately from a receiving of evidence on and a resolution of the question of damages. And that puts us precisely within the ambit that we are talking about here today. Judge Zaney, in his decision, specifically made a liability finding. He said that the parties were entitled beyond the indemnity obligation imposed by the primary policy. He also granted them a right under that policy. And so our position is that interlocutory jurisdiction is appropriate because there's both a right and a liability that was found by the Court. And here, if you look at Cara Delis, there was no evidence on or a resolution of the question of damages. So we are exactly within the scope of that particular case. That case predated Bucher-Geyer by 20 years. So Bucher-Geyer should have taken the lead from that case to afford interlocutory jurisdiction in a case involving the COGS of $500 per package limitation. What I'd like to do is also address, getting back to Crown-Zellerbach, the Court in that particular case found or discussed the fact that in Nebel-Towing, Nebel-Towing involved a no-action clause. That no-action clause was made void by the Louisiana direct action statute. And in fact, that's almost precisely what we have in this case, where it's a very analogous clause. He carved out some language. But if you look at the case of Hidalgo v. Dupuis that was cited in that decision, in Hidalgo, the Court said, the statute simply voids any policy clause which conditions the right of the injured person to enforce against the insurer its contractual obligation to pay the insured's debt upon as prerequisite, the obtaining by the injured person of a judgment against the insured. And that language still remains in the clause that Judge Zaney approved of in his decision. In essence, you still had to have a judgment. He simply struck the language about having to have paid in advance. So in our view, that is a no-action clause. Judge Zaney's decision shouldn't stand for that reason. We also added another argument, at least the first part of the argument, that there is appellate jurisdiction under 1292A3. And we get to the heart of the matter. That doesn't end it. So what would be, it's still down in the trial court. So what would be the path from there? Your Honor, the remaining path, of course, is to have the trial on the merits on both the remaining issues of liability. Admittedly, this is a finding of contingent liability, but a liability finding nonetheless. So we actually have a trial scheduled before Judge Zaney at the end of September. This is not any kind of liability finding. What are you saying is a contingent liability finding? Well, Your Honor, the way it is in this policy, it has nothing to do with limitation as such, or with the substance of limitation. No, but the court did make a liability finding in his decision. He found specifically that the excess insurers, quote, are not liable beyond the indemnity obligation. Well, I understand that, but we're using the, we're referring to two different levels of responsibility. And the first level of responsibility is that of the TUGS. That is true, Your Honor. From the standpoint of, are they, you know, are they entitled to limit liability or not? And then the insurance covers whatever it covers. But the statute, 28 U.S.C. 1293A3. You're not conceding that, you're not arguing whether this resolves that there's no limitation. No, Your Honor, I'm not. Yeah, that's all I'm saying. But I, what I am saying is that there, the court did decide a right, whether you construe it as a liability of court. So you want to reverse Judge Zaini's legal determination on those rights, so you're back to square one in terms of your ensuing trial. Is that oversimplifying, if you win up here, you want us to reverse as a matter of law, right? That's correct. You're asking for us to pronounce, to reverse the trial court as a matter of law on what you say is specific indemnity finding, so that when he goes back down below the trial in September, he's going to be moving along a path that the Fifth Circuit has opined X. That's correct, Your Honor. As part of the template for the trial. Absolutely correct, Your Honor. Okay, just want to make sure I understand what you're asking for. Thank you, Judges. All right, thank you. All right, Continental, Mr. McShane. Yes, Your Honor, I actually represent the first excess insurers and the second excess insurers. I don't represent Continental, Your Honor, I have New York Marine, Stonington, National Specialty, and various syndicates at Lloyd's that I would refer to for ease of reference as the first excess insurers. Some or all of these insurers are on the $29 over $1 million first excess policy, and some of the other insurers are on the $70 over $30, and I represent all of them. I do not represent them. One more time, you don't represent Continental? No. So we shouldn't have this down here by your name. So you represent whom? I represent New York Marine, Stonington, National Specialty, and various syndicates at Lloyd's that I would refer to for ease of reference as the first and second excess insurers. They provide all the insurance, $99 million over $1. There are some factual points I'd like to make in respect of the 1292A3 inquiry that the Court has focused on. First of all, there has been no determination of any percentage of fault. We have three different vessel interests here, and all of them very vigorously contest their own culpability. At the trial, the judge is going to have to decide how to allocate fault and will have to decide which, if any of the three vessels, will be entitled to limit liability. All three of them assert that any of their negligence was without the privity or knowledge of their corporate owners and that they get to limit. So there are a lot of moving parts here. Some of the outcomes could mean that our insurance policies are never implicated at all above the limitation fund. So the limitation fund for SINAC is slightly over $14 million. We could have an overall damage award and an allocation of fault where SINAC pays less than their own limitation fund, which would render completely moot what we're here talking about today. We could have a finding that SINAC is not entitled to limit, which would render entirely moot what we are talking about here today. That's why this case is ill-suited for 1292A3 interlocutory appeal. My best cases are the Fifth Circuit cases, Your Honor. In Celtic Marine, we have said in our circuit we construe 1292A3 narrowly because interlocutory appeals are disfavored in the law. The Butcher-Geier case is very similar to our case because it was the COGS of $500 limitation ruling in the underlying court that got appealed on a 1292A3. And our court here in the Fifth Circuit said, well, we don't even know whether you have a liability yet or not. That's why the points I'm making to you are so critical on the 1292A3 question. We could go all the way through what's set to be a two- or three-week trial, and the ultimate outcome is SINAC's exposure because of a fault allocation or because they get to limit liability is below the limitation fund. And therefore, whether we have to pay anything above the limitation fund is inchoate right now. Do you believe that your clients have received a benefit, an adjudicated benefit from Judge Zaney's ruling? My understanding is that he denied a summary judgment filed by the other side. Do you believe that there's anything in his ruling that gives you a legal benefit that you intend to rely on in the upcoming trial before the district court? In the upcoming trial before the district court, the ruling that we get the benefit of limitation has been decided by the court already. And we would go in and support our insured's arguments that they're entitled to limit liability. If they are entitled to limit liability, they're capped at $14 million and some change. If they're not entitled to limit liability, then they pay full damages, which are covered by me. The argument that I have to pay, even if they get to limit, is a benefit that I've achieved because the court made that ruling. Does that answer your question? Yes. So, disfavored in the law, the Cogsit case is very similar. And for those reasons, we've assailed the jurisdiction. I have to say, though, Your Honors, that coming in here and assailing the jurisdiction, somehow you guys are not jurors. I don't have to worry about it. Don't call us guys. Thank you. Pardon, Your Honor. I mean, in an otherwise elegant argument, it's just like nails on a blackboard. I can't understand that. I beg your pardon, Your Honor. And that's not because of sex. That's because of the colloquial. I didn't mean to be colloquial with the court. I apologize. What I was meaning to say was there is always this worry that if you assail the jurisdiction, it may send the message that you don't have meat on the bone on the merits of your argument. So I'll turn now to the Crown-Zellerbach aspect of this case. The rubric is set down by Judge Brown in the case. What could be more fair than for an insurer to say, I'll pay 100% of what my insured has to pay, but no more? That is the essence of a protection and indemnity policy. The indemnity part of a P&I policy says, pay when paid. I will reimburse the insured when they're cast in judgment. By definition, that's what indemnity wording means. Valero has raised in their principal brief the point that in other aspects in the direct action world, the indemnity nature of a P&I policy has been held to have to give way to the public policy of the direct action statute. In the Louisiana Supreme Court case Grubbs, in the Fifth Circuit case Hidalgo, insurers on P&I policies tried to say, I can't be sued by direct action because I'm an indemnity policy, and that's been invalidated. It's viewed as similar to the no action clauses that gave rise to the creation of the direct action statute in the first instance. But that doesn't change the fact that the indemnity wording in the policy spells out the maximum liability that the insurers are willing to pay. More importantly, what I'd like to emphasize to the court is, Judge, we were a little bit disappointed that Judge Zaney didn't go further and explore. We were happy to win, but we raised arguments based on four different areas of our insurance policy. All four of the areas are cited in the brief with record references. But we are not relying only on the preamble indemnity wording in our policy. Briefly, we have a section that says that we agree to make good on what the insured has become liable to pay and shall pay. That's the indemnity wording that's being assailed so rigorously by the other side. We also have an endorsement that says a third party cannot recover more than the insured could recover by way of indemnity, by way of seeking reimbursement from their insurer. We have a third section that says liability here under shall not exceed that imposed against the insured by law. And we have a fourth section that says if the insured's liability is lessened, then this company shall receive the benefit of such lessened liability. That one's really important because it's found in a section called the broker, boat broker's liability section, and it wasn't even addressed by either of the appellants. So there it is. It's clear and expressed in its terms. And no one, as far as I can tell, has even assailed that one. So it's not accurate to say that we are bottoming our arguments based purely on the indemnity nature of our contract. We also, Your Honors, on the 29 over 1, both the 29 over 1 and the 70 over 30 are following form provisions, so they pick up the clauses of the primary policy. But the first excess 29 over 1, it also has its own wording that goes on to say that we agree to indemnify SINAC for all liability, loss, damage, or expense insured against. That wording is nearly identical to a Louisiana state law case called Rogers versus Texaco that we cited and discussed in our brief. One of the significant things about this Rogers case is we're dealing with that kind of Wilburn vote versus state law interplay in the Fifth Circuit case, Magnolia Marine. The Fifth Circuit said that the special contours of Crown-Zellerbach is to be set by Louisiana law and Louisiana courts. I'm paraphrasing. It's not a 100 percent deference, but it is a Louisiana law question. And so there has been gloss and detail added to Crown-Zellerbach owing to the fact that these cases have been litigated in the Louisiana court system. And in the Rogers versus Texaco case, the wording that was found to be good enough to allow the insurers to avail themselves of the benefit of limitation of liability said, quote, we will pay all sums you legally must pay as damages, close quote. The party trying to break the insurer's right to limit said that wording is not good enough. You've got to have talismanic wording. It's got to make reference to the Limitation of Liability Act. And the court said, no, it doesn't. The court said it should be sufficient to state that the insurance company's liability is limited to that of the insured. And we have offered you four places in our insurance contract. Judge Stewart, once again, we're asking you to interpret a contract like the last hearing. Four different sections which we say clearly allow us to limit our exposure to the exposure of the insured in the event, for instance, they get to limit liability. So we have really four cases that we've relied upon, Crown-Zellerbach, and three cases that we've worked over time, Rogers from the Fourth Circuit, and two cases from the Eastern District of Louisiana, N. Ray Nika and N. Ray Uvalde, I think it's Uvalde Maritime. Four cases that provide detail and that say, in essence, there's no talismanic language required. There's no Admiralty-specific limitation of liability language required. It's enough to say we don't have to pay more than the insured has to pay. And that is the indemnity insurance policy is. Those four cases, if you go look at the principal briefs and the reply briefs filed by the oil companies, they're not listed in the list of cases because they're not discussed. We've gone through them in detail and we say that this is the controlling rubric that supports our insurer's entitlement to benefit from our insurer's ability, touch wood, to limit liability. Do you think the 8i argument is just a red herring? I think the 8i argument, you know, both of the oil companies say Judge Brown could have looked to the indemnity wording but did not. First of all, again, I have three additional clauses. The 8i wording comes from a P&I club book of rules. We're on commercial insurance contracts, so we don't have a book of rules. We are P&I insurance written on forms that go back mostly to the 50s, the SB-23 form. But we're mostly Lloyds of London and domestic insurance companies, so we don't have club rules. In that case, there was a club rule that left no doubt how the case should go. But that doesn't mean that our arguments are unavailing. They just weren't addressed in that case. And then, of course, we have other contractual clauses in addition to the indemnity nature of our policy. We also would note that this is an effort to assail the interpretation of a contract to first and second excess policy. That's contrary to the declarations that were uncontroverted, that were put in by the insurers in connection with the motion practice, as well as by the insurance enactment marine, all attesting to the fact that what they were after was to pay insurance that would obligate the insurer to pay to the extent that the insurer had to pay. So that's in there. That's not what Judge Zaney's record turned on. But it's significant in the sense that it might be suggested, it's being suggested by the oil companies that our words lack clarity in our insurance policies. Valero and Shell, I do want to touch on this. I've raised a uniformity issue in the briefing, Your Honors, and I did it with some hesitation because I think this Court's probably bound by precedent to reject the arguments that I've made. In the first case that dealt with this issue, direct action and its impact on limitation of liability, it was a tricky Supreme Court case in the 1950s, a four to one to four ruling, where the five judges on a majority, the four judges, not the concurring judge, the four judges, Judge Frankfurter and the three who joined him, said that this direct action application and the possible exposure above the limitation amount is a disturbing intrusion into marine insurance. And Judge Brown in his dissent in Neville Towing said, uniformity in the maritime law, if we apply this rule, is at an end. So we think, as a practitioner, we can tell, I know, I see it in this case. We go on the record in this case. If this vessel incident had happened in Arkansas on the Mississippi River, we wouldn't be here because the only reason we're here is the direct action statute and its substantive law overtaking of the limitation of liability framework. In every other state in this country, we would not be here. We would get the benefit of whatever defenses are insured could assert in the underlying action. I think this is a terrible disruption of the general maritime law. I know our Supreme Court has said some conflicting things about uniformity because sometimes we say, look, we need state law to define the parameters of marine insurance issues. This is not just a marine insurance issue. It's also a limitation of liability acts. I did want to touch on it, but I want to emphasize to you I'm not ignoring the fact that there is some precedent here that may be, that may control what your honors feel obliged to do. There's one more issue in Valero's reply brief that I'd just like to mention briefly because it's a little bit confusing and I think it requires some correction. There's a primary million-dollar insurance policy in this case. It's underwritten. Judge Stewart, that's the continental interest. And John Emmett is their lawyer. He filed a short brief saying, I'm not going to take any position on this because I have a million-dollar policy and the limitation fund is 14. So if they get to limit, my money's gone anyway. So I don't have a dog in the hunt. I'm not going to say anything about it. Well, Valero latched onto that and argued in their brief that we are bound by what the primary lawyer does. And a clause was cited from the primary insurance contract that says, by signing this policy, it is understood and agreed that all underwriters subscribing here to acknowledge that they will follow what continental does. I'm paraphrasing. That is a clause that deals with subscription market insurance. So the primary policy is continental 50% and it's also Allianz. I think in the briefs they call it AGCS or something like that. So what that means is that the following market on that policy agrees to let continental run the claims and make the decisions. That doesn't oblige the, it's being argued by Valero that we on the 29 over 1 and the 70 over 30, somehow because the primary lawyer didn't bring heft to the legal arguments here that we're bound by that and just wanted to make clear that the clause that's being relied upon by Valero to support that argument. It deals with obligations between and among subscribing insurers on the primary policy. It does not speak to the obligations of the insurers that are represented by our interests. That's all I have to say. Do you have any questions? No. Your Honor, I didn't mean to insult you. I beg your pardon. I want to say one more thing. I've got three minutes. I had a, going back to the 1292A3 issue, in the reply brief from Valero, a number of cases were cited saying it's not correct to say you can't have a denial of a summary judgment come up under 1292 and the cases we've outlined it in our supplemental jurisdiction brief. Those were 1292B cases in the main. I had a case that came up called NRA Superior about a decade ago where I lost the summary judgment to Judge Fallon. I was trying to argue judicial estoppel because the litigant didn't list his contingent assets, his lawsuits, in a schedule. I said you've got to dismiss this case under judicial estoppel. Judge Fallon denied it, but he thought it was an important question. And he certified it and we came up. So I'm not suggesting that doesn't happen. Judge Jones was on the panel on that case. It was called NRA Superior and it was a claimant named Hudspeeth. So that does happen. But this is not a certification issue. This is not an issue where Judge Saney said for some reason in my case this is an essential issue that we ought to decide now. This falls within a different rubric, one that the Fifth Circuit has said should be narrowly construed and has acknowledged that those kind of appeals are disqualified. Let me ask you this while you're up there because your presentation suggests to me that you won't be caught off guard about a question because I'm going to ask them. In trying to get ready for this, I found this Wonstad case out of the Eleventh Circuit which Judge Corrins wrote, which has this 1292A3 issue in it where the district court had made a ruling below. Long story short, Judge Corrins cites prior Fifth Circuit cases in forward. Obviously, it was predecessor to us. But in effect, it had this duality of arguing this 1292A3 and also arguing the Cohen collateral order appealability issue. But at bottom, the court in construing all this focuses in on the quote unreviewability of the matter. At bottom, the question is, back to where we started, what is the unreviewability aspect of what's happened below such that if we don't have jurisdiction dismissed, that even assuming arguendo, whatever was done was wrong, it's immunized from appeal in the ultimate scheme of things. You follow me? I think so. We asked for cases. They gave some other cases which we didn't have. When we say they're going to file 28J, even when I was trying to read quickly, I mean, this isn't totally under proposal. I mean, ultimately in the collateral order, it's the Supreme Court has told us to narrowly construe Cohen, et cetera, et cetera. I know that Mr. Diaz argued, well, this is different because the statute itself has the language and on and on and on. But it just worries me it still boils down to us hearing something that's not finished, not final, that even if the district court made an incorrect ruling, that ultimately it's still subject to appeal. What am I missing? I think there is, if you look at the history of 1292A3, I'm not sure about this collateral ruling doctrine that you're talking about. I'm not familiar with it. But the history of 1292A3. Well, the collateral order doctrine under Cohen basically in another context allows us to hear an interlocutory appeal if it fits the Cohen doctrine, et cetera. I mean, you could say it's not applicable because they're arguing the statute. They're not really here arguing Cohen. But in the case I mentioned, there's a maritime case in which both arguments were made. It's appealable under Cohen collateral and it's appealable under 1293. Judge Carnes opines on both in reversing the district court and dismissing the case for no jurisdiction on this 1293A. And so I'm sort of trying to cut to the core of what is it about this case with all these insurers and all that's going on that when you get to the core of it, whatever Judge Zaney did right or wrong would be immunized from later appeal here as opposed to as I asked him, okay, what you're asking this panel to do is to give you a legal ruling that binds the trial of the case going forth. Obviously, when that case comes back up, the mandate is what this panel held initially. So if it's before some other panel, they're stuck with what we said. And that aspect of it worries me. I mean, it's probably an answer, but that part worries me is I'm trying to follow the logic of it. We render something here. It comes up, a different panel, and they're stuck with what we said under our rules. Do you understand what I'm saying? Yes, and I think I can set up a couple of bookends here that help frame this issue. The first one is the reason interlocutory rulings are disfavored in the law is because unless there is because of inefficiency, but also why can't this all be done at once? And you're asking me is there any legal significance to deciding this now versus later. There is no reason that I can see why this issue could not be addressed by ordinary appeal. There is no benefit to anyone as such to resolve this now rather than later, except somebody who's had a bad ruling always wants to get it reversed sooner rather than later. This case is ready to proceed. The issues that are the subject of this point can be brought up on a later appeal. Judge Jones asked you a great question from my standpoint, whether or not you would seek the benefit from the ruling made by Judge Zaney below, to which you answered, and I think you said you would, but I guess you're saying now, whatever benefit might have inured to you, you're willing to? What I meant about that was this issue's already been decided, so it's not part of the trial. So the trial is does my insured get to limit their liability? If they get to limit their liability, the issue of whether I have to pay above that has been decided by motion practice. So I suppose it would be true the oil companies would rather see that reversed before a trial, which is coming up in about six weeks. Okay, well, that's helpful. I just wanted to ask the question while it was on my mind. They're obviously coming up with a rebuttal, so they got the benefit of knowing what to think, and they'll get their shot at responding. I did not mean to take you further, Judge Jones. No, thank you. Okay, I just wanted to kind of get it fleshed out in my head anyway. All right, thank you. Thank you, Judge. All right, back up. Who took the rebuttal? Mr. Letourneau, you, the anchorman. All right.  I'm not trying to foreclose whatever else you was coming up with a rebuttal, but just wanted, before you sit down, to sort of address my little piece of it. Your Honor, candidly, I don't know that it is that there is an unreviewable issue here that can't be resolved at the end of the case. But having said that, it does make a big difference to us that this issue be rectified. One is we're of the opinion. It makes that different than every time we get an interlocutory appeal. If the lawyers think the judge messed it up, whether it's in the pretrial order or whatever, whatever, whatever. Judge Englehart comes here from vast experience on a trial, Judge. I can feel his brain cells twirling over here about all the cases you get with a ruling. I'm just saying, stripped of the complexity of this case, the elision, all the money, et cetera, why don't we just have an issue where great lawyers want to get us to reverse something they deem adverse in the heat of a big money case? But why is that qualitatively different than you can get your shot later? Suppose, and at the heart of this is, suppose you win in the trial. Doesn't this all become obviated? Well, Your Honor, without getting into issues of pretrial strategy, but there are obviously ongoing discussions with parties in terms of trying to resolve it. I'm not trying to push you there, but just focus on your first statement that you acknowledge that there is not something unreviewable. I can't contest that if we take it to the final measure and take that up on appeal after the trial court renders its rulings. So then what's compelling about us seeing this jurisdiction and having to wade into the depths of Crowns-Ellerbeck and the footnotes and what Judge Brown said and on and on and on, interesting stuff, but at the end of the day, given the posture of all the parties. Well, candidly, Your Honor, it does have a bearing in terms of how the parties deal with each other between now and trial. And if this ruling stands, then our discussions with Synax insurers in trying to resolve the case are completely different than if it doesn't stand. And so that's where it really has import to us. Judge Engelhardt, you asked the question, was there any benefit? And the benefit to the insurers at this stage of the game is their reserve. Their reserve now is set at the limitation of liability, essentially, and they have all that other money that they can take off their books. So they have, in fact, derived a benefit as a result of it. From a constitutionality perspective, if you look at the Cushing decision, the Cushing court said, but the crucial fact which requires that the conflict between state and federal law be faced now is that the present actions are brought completely independently of the limitation proceeding. That is not the case here. What we have is we have a concursus of claims. We have all the parties before the court. All claims are present. We don't have a decision that even implicates the constitutionality of the direct action statute vis-a-vis the Federal Limitation of Liability Act. In terms of the clauses that the appellees rely upon, in addition to the fact that Judge Zaney has a no action clause, that clause also has a fundamental flaw in that the CTL endorsement struck the only clause that would have provided coverage. The CTL endorsement basically did not address elisions. So Judge Zaney's clause, in effect, is both a no action clause as well as a clause that has no coverage provisions underneath. We argued in our briefing that the issue of coverage has been waived because appellees have not issued any type of reservation of rights or denial of coverage. The other clauses are found in the CTL endorsement. And in that CTL endorsement, because there's no coverage for elision, those clauses also are not germane. The last one is the broker's liability. And our position is that it relates to broker's liability. It doesn't pertain to this particular case. And I think that's about all I have time for, Your Honors. All right. Thank you, Counsel. Big case. Big time lawyers presented to us in the briefs and at oral argument. We do appreciate the help with the case in briefing and at oral argument. The case will be submitted along with the others that we heard today. And the panel will stand in recess until 9 a.m. tomorrow morning.